# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JANET CARTER,                        )
                                       )
          Plaintiff,          )
                                       )
vs.                              )     Case No. 4:10CV00577 AGF
                                       )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security,   )
                                       )
          Defendant.      )

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Janet Carter was not disabled and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, or Supplemental Security Income ("SSI") under Title XVI of the Act, *id.* §§ 1381-1384f. For the reasons set forth below, the decision of the Commissioner shall be affirmed.

Plaintiff, who was born on January 7, 1957, filed her applications for benefits on January 22, 2007, at the age of 50, alleging a disability onset date of January 10, 2007, due to problems with her right wrist. After Plaintiff's application was denied at the initial administrative level, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). An initial hearing, at which Plaintiff testified, was held on December 11, 2007. A supplemental hearing at which Plaintiff, a medical expert, a psychological expert, and a

vocational expert testified, was held on June 18, 2008.  By decision dated August 6, 2008, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform certain jobs that were available in the national economy, and was therefor not disabled under the Act.  Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on February 17, 2010.  Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ used an incorrect standard in determining that Plaintiff did not have a severe mental impairment; erred in assigning more weight to the opinions of the non-examining medical and psychological experts who testified at the supplemental hearing, than to the opinions of examining consultants; erred in failing to include in his assessment of Plaintiff's RFC any mental limitations; failed to fully and fairly develop the record by not obtaining certain x-rays of Plaintiff's right wrist; and improperly evaluated Plaintiff's credibility.  Plaintiff also asserts that the Appeals Council erred in failing to take into account evidence submitted to it.  Plaintiff asks the Court to reverse the Commissioner's decision, and either award Plaintiff benefits or remand the case to the Commissioner for further proceedings and a new decision.

## BACKGROUND

### Work History and Application Forms

The record indicates that Plaintiff worked full time as a cleaner from 1999 to July 2006, a cashier for two months in 2002, a fast food cook for six months in 2001, a nurse's

aide from 1995 to 2001, a packer at a cookie factory for two months in 1992, and a child-care worker for two weeks in 1990. In each of her jobs she earned from $6.00 to $9.00 per hour. (Tr. 146.) Earnings records show that the only years in which Plaintiff earned over $4,000 were 2002 (approximately $7,000) and 2003 (approximately $11,000).

In the Function Report section of her application for benefits, Plaintiff described her daily activities as "[d]rink coffee, make phone calls, relax (etc)." Plaintiff wrote that numbness in her right hand caused her to have trouble dressing, bathing, caring for her hair, and feeding herself. She wrote that her right hand would go numb and she could not twist it "as much." She indicated that she could sometimes complete her household duties, such as cleaning, laundry, and ironing, but that on some days she had no use of her right hand because it was "extremely painful." (Tr. 169-71.)

In the Disability Report section of her application, Plaintiff wrote that she was 5' 4" tall and weighed 136 pounds, and that she took ibuprofen for tooth pain and Penicillin for an infection in a broken tooth. (Tr. 144-49.) In the Disability Appeal form requesting a hearing before an ALJ, Plaintiff wrote that she took Naproxen for pain and swelling, and wore a wrist band. (Tr. 174-75.) In another Disability Report, Plaintiff listed that she was taking Flonase for problems breathing, Zyrtec for stomach problems, Prevacid for throat problems, Tramadol for pain, Tobramycin for eye infections, and Guiatuss for chest pain. (Tr. 183.)

The record includes a letter to the ALJ dated March 24, 2008, by Plaintiff's daughter, who wrote that it hurt her to see Plaintiff suffer, and that Plaintiff had put in

several applications "knowing she can't hold a job because of the disability of her hand, arm, fingers (etc.)." Ms. Carter wrote that she gave Plaintiff $40.00 per week to help her out, but the money was "running out" and helping with Plaintiff's bills was "too much." She explained that Plaintiff's bills were "piling up" and she didn't "know what else to do." Ms. Carter stated she was very concerned about Plaintiff and requested to "rush some help or whatever the decision will be. Before [Plaintiff] drift[ed] away." (Tr. 185-86.)

**Medical Record**

On April 11, 2006, Plaintiff was seen at a community health center, for refills of prescriptions for anxiety and sleeping problems. Her prescription for Zoloft was increased, and she was given a referral to Hopewell Clinic. (Tr. 227-28.) An examination on January 10, 2007, revealed a firm ganglion cyst on her right wrist and Plaintiff reported intermittent paresthesias in her fingers. (Tr. 219.) Progress notes dated February 19, 2007, state that Plaintiff had a "large bump on her right wrist," and that Plaintiff reported that she often lost feeling in her fingers and that pain radiated up her arm, worse at night, for which she was taking Ibuprofen. Plaintiff was diagnosed with carpal tunnel syndrome and ganglion cyst on the right wrist. (Tr. 215.) She was prescribed Naproxen and an arm brace. (Tr. 261.) On March 19, 2007, Plaintiff reported that the ganglion cyst was painful and she had occasional numbness and tingling in the median nerve distribution. Night splints and Naproxen had provided minimal relief. Examination revealed that Plaintiff had decreased two-point discrimination in the thumb, index and middle fingers, and carpal

tunnel syndrome. Plaintiff wanted the cyst excised and was given a referral. (Tr. 230.) From November 8, 2007, to May 28, 2008, Plaintiff was seen at another community health center, during which time her medications included Tramadol and Ibuprofen. (Tr. 187-207, 264.)

**Evidentiary Hearing of December 11, 2007 (Tr. 43-55)**

Plaintiff stated that she sought counsel but could not find an attorney to take her case. She testified that she was wearing a bandage around her wrist because she had to drive to the hearing, as her daughter was not able to bring her. She used the bandage to prevent her wrist from moving and hurting. Plaintiff stated that she was right-handed, and "stressed out" because she was not able to hold a job. She testified that she had trouble walking because she tired quickly and would have to sit down and catch her breath. She took medication for her high blood pressure and depression, but had to stop taking the medication for depression because it made her shake. Plaintiff stated that she broke down and cried at times, and could hardly be around people.

Plaintiff testified that she had never been married, and had three grown children, and three grandsons, ages fifteen, thirteen, and five. She babysat for her grandsons without difficulty because her two older grandsons helped. Plaintiff testified that she received $40 per week from her daughter for babysitting and that both her daughters helped pay for her food and other bills. Plaintiff had a driver's license and could read and write. She testified that she was supposed to have surgery on her wrist, but chose not to because there was a chance it would cut a blood vessel. The ALJ stated that he would

request physical and psychological evaluations of Plaintiff and then schedule another hearing.

## **Opinions of Medical and Psychological Experts**

On January 14, 2008, Elbert H. Cason, M.D., examined Plaintiff, who presented with a tight elastic bandage over her right wrist.  Dr. Cason reported that Plaintiff's right-hand grip strength was four out of five, and that wrist, elbow, and shoulder motions were normal, bilaterally.  Both of Plaintiff's hands could be fully extended, fists could be made, and fingers could be opposed.  He further found that Plaintiff's fingers could be used for buttoning, writing, and using small tools and parts.  Dr. Cason diagnosed Plaintiff with a probable ganglion cyst of the radial surface of the right wrist, noting that the reason the cyst was not present at the time of his examination was because of the elastic bandage Plaintiff was wearing.  (Tr. 234-36.)

Dr. Cason completed a physical Medical Source Statement in which he indicated in check-box format that Plaintiff could lift and carry up to ten pounds occasionally ("very little to one-third of the time"), sit for eight hours without interruption, and stand and walk for one hour at a time and for a total of two hours in an eight-hour workday.  Plaintiff, who was right-hand dominant, could only occasionally reach, handle, finger, feel, push, and pull with that hand.  Dr. Cason further opined that Plaintiff could climb stairs and ramps, balance, stoop, kneel, crouch, and crawl on an occasional basis and could never climb ladders or scaffolds.  He indicated that Plaintiff could shop, travel without assistance, and use public transportation. (Tr. 238-43.)

Also on January 14, 2008, Plaintiff was seen by state agency consultant Gitry Heydebrand, Ph.D., for a psychological evaluation, which included a clinical interview, a mental examination, and administration of the Wechsler Adult Intelligence Scale–III (WAIS-III) and the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) tests. Dr. Heydebrand observed that Plaintiff was alert and socially responsive during the interview, that her thought processes were organized and logical, but that her mood appeared dysphoric. Dr. Heydebrand diagnosed Plaintiff with major depression, mild, recurrent and a Global Assessment of Functioning ("GAF") score of 85.[1] She reported that testing showed IQ scores in the low average to borderline range, that Plaintiff was able to understand and carry out simple instructions, that her ability to concentrate and focus on tasks to complete them was "impaired," and that her ability to adapt to environmental demands was effective, though she could become overwhelmed as the number or complexity of demands increased. Dr. Heydebrand further reported that Plaintiff appeared able to independently perform basic self-care and was competent to manage her own funds. (Tr. 247-53.)

---

[1] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. Diagnostic & Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) at 32. GAF scores of 31-40 indicate "major" impairment in social, occupational, or school functioning; scores of 41-50 reflect "serious" impairment in these functional areas; scores of 51-60 indicate "moderate" impairment; scores of 61-70 indicate "mild" impairment; and scores of 81-90 indicate no or minimal symptoms and good functioning in all areas.

In a mental Medical Source Statement, Dr. Heydebrand indicated that Plaintiff was not restricted in the ability to understand and remember simple instructions; mildly restricted in the abilities to carry out simple instructions and make judgments on simple work-related decisions; moderately restricted in the abilities to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions; and unimpaired in her abilities to interact appropriately with the public, supervisors, and co-workers, and respond appropriately to usual work situations and to changes in a routine work setting.  (Tr. 254-56.)

On May 11, 2008, Plaintiff was prescribed a wrist splint and anti-inflammatory medications.  It was noted that she was off work that day.  (Tr. 260.)

**Evidentiary Hearing of June 18, 2008 (Tr. 21-40)**

Plaintiff, who was still unrepresented, testified at the supplementary hearing and restated her concerns with having surgery.  Instead of surgery, Plaintiff stated that her physician would start draining the cyst every month or every other month to reduce the inflammation.  She testified that she could not make a fist with her right hand.  She could touch her little finger to her thumb, but it was painful.

Plaintiff testified that she had lost two jobs as a cleaner recently because of the "disability" of her right hand.  She worked at one of these jobs for about four months, and at the other for about six weeks.  At the second job, she was told that she complained too much, and she had to take breaks to get her medication.

Medical expert Morris Alex, M.D., asked Plaintiff a few questions about the

8

surgery that had been recommended and testified that Plaintiff had "peripheral neuropathy . . . [and] right median nerve involvement with numbness and tingling, but . . . the range of motion of her hand was perfectly normal." He testified that Plaintiff could do light work.[2] In response to the ALJ's observation that Dr. Cason had indicated that Plaintiff was limited to standing and walking for two hours in an eight-hour day, Dr. Alex responded that there was no reason given to limit Plaintiff's walking, and that Plaintiff had no restrictions, including manipulative, besides light work.

Psychological expert James Reid, Ph.D., testified that there was not sufficient evidence in the record to indicate that Plaintiff had symptoms that equaled those for a depressive disorder, as listed in the Commissioner's regulations. Dr. Reid expressed surprise by the "moderate" (as opposed to "mild") restrictions assessed by Dr. Heydebrand in Plaintiff's ability to understand, remember, and carry out complex instructions, and ability to make judgments on complex work-related decisions. Dr. Reid opined that Plaintiff only had mild restrictions in daily living, concentration, persistence, and pace, and no restrictions in social functioning.

The ALJ then asked the vocational expert to consider a hypothetical individual of Plaintiff's age, education, and work experience; who had been diagnosed with the physical problems identified by the ME; and who was able to perform the full range of light work

---

[2] "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of up to ten pounds; and that might require a good deal of walking or standing, sitting most of the time, and some pushing and pulling of arm or leg controls.

but none of Plaintiff's past work. The VE testified that such an individual could perform the work of a surveillance system monitor, call out operator, and addresser. The VE noted that these jobs did not require handling, fingering, or feeling and that they existed in significant numbers in both the local and national economies.

**ALJ's Decision of August 6, 2008** (Tr. 6-20)

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 10, 2007, and had the severe impairments of right wrist volar ganglion cyst and carpal tunnel syndrome. The ALJ summarized the medical record and concluded that it did not establish that Plaintiff had a "severe" medically determinable and diagnosed mental impairment, in that Plaintiff's depression did not impose more than mild mental functional limitations, with "no more than mild, if any, restriction of activities of daily living or difficulties in maintaining social functioning or concentration, persistence, or pace." He noted that Plaintiff's mental status never deteriorated to such an extent that she needed psychiatric intervention at an emergency room or inpatient psychiatric hospitalization. The ALJ stated that in reaching this conclusion he placed "great weight" on Dr. Reid's testimony, which was corroborated by Dr. Heydebrand's GAF assessment of 85.

The ALJ held that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any deemed-disabling impairment listed in the Commissioner's regulations. The ALJ then concluded that Plaintiff had the physical RFC to perform light work, except that she could not lift or carry more than 20 pounds

occasionally and 10 pounds frequently and could not use her right hand continuously. After noting the relevant factors, as set forth in the Commissioner's regulations, in evaluating an allegation of disability, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effect of her symptoms were "not entirely credible." The ALJ found that Plaintiff's daily activities of living and functioning independently, babysitting her grandchildren, and driving an automobile were inconsistent with her allegations of disabling symptoms and limitations, and that no treating physician had placed any "specific long term work-related restrictions upon Plaintiff's activities" or opined that Plaintiff was disabled. The ALJ found that to the extent Plaintiff's daily activities were restricted, they "appeared restricted mainly as a matter of choice, rather than any apparent medical prescription."

The ALJ found that Plaintiff's work activities since her alleged disability onset date, while not constituting substantial gainful employment, did "not enhance" Plaintiff's credibility. He observed that Plaintiff did not appear in any obvious physical or mental discomfort during the course of the two hearings. The ALJ placed "great weight" on Dr. Alex's hearing testimony that Plaintiff could do light work. The ALJ concluded that Plaintiff was unable to perform any past relevant work but, based on the testimony of the vocational expert, could perform the work of a surveillance system monitor, call out operator, or addresser, and that these jobs existed in significant numbers in the state and national economies. Thus, the ALJ concluded that Plaintiff was thus not disabled under the Social Security Act.

<u>**New Evidence Presented to the Appeals Council**</u>

On January 26, 2009, Plaintiff was seen at an orthopedic ambulatory care clinic. She was limited to no heavy lifting, and to working four or less hours per day for three to five days per week. Plaintiff was to return to the clinic in three weeks. (Tr. 265.) The Appeals Council determined that the new treatment note "did not support greater limitations than assessed by the [ALJ]," and denied Plaintiff's request for review. (Tr. 2.)

**DISCUSSION**

<u>**Standard of Review and Statutory Framework**</u>

In reviewing the denial of Social Security disability benefits, a court "must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole." *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "'may not reverse . . . merely because substantial evidence would support a contrary outcome.' Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted); *see also Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (explaining that the concept of substantial evidence allows for the possibility of drawing two inconsistent conclusions, and therefore, embodies a "zone of choice," within which the Commissioner may decide to grant or deny benefits without being subject to reversal by the reviewing court).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically

determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a).

A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. Otherwise, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work. If not, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors -- age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).

This burden can be met the testimony of a vocational expert in response to a hypothetical question that takes into account all of the claimant's impairment that the ALJ properly finds are supported by the record. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)).

When, as here, the Appeals Council has considered new and material evidence and declined review, the reviewing court "must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence." *Gartman v. Apfel*, 220 F.3d 918, 922 (8th Cir. 2000) (quoting another source).

**ALJ's Assessment of Plaintiff's Mental Impairment**

Plaintiff argues that the ALJ erred at step two of the evaluation process in finding that Plaintiff's mental impairments were not severe. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). It is the claimant's burden to establish that an impairment is severe. *Id.* "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Id.* at 708.

As noted above, in evaluating whether an alleged mental impairment is "severe," the ALJ must identify a claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. If a claimant's degree of limitation in the first three functional areas is "none" or "mild" and "none" in the fourth area, the impairment is generally considered not

severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

Here, the Court concludes that the ALJ applied the proper test for evaluating the severity of Plaintiff's mental impairments, and further that Dr. Heydebrand's GAF of 85 together with Dr. Reid's testimony at the supplemental hearing constitutes substantial evidence to support the ALJ's finding that these impairments were not severe. *See, e.g.*, *Bradford v. Astrue,* No. 2:10CV15 DDN, 2011 WL 147734, at *7 (E.D. Mo. Jan. 18, 2011) (holding that the ALJ's determination at step two that the plaintiff's depression was not severe was supported by substantial evidence where the plaintiff's GAF was assessed as 62). In addition, Plaintiff did not allege mental impairments on her applications for benefits, which the Eighth Circuit has recognized as a significant factor in determining the severity of an alleged mental impairment. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

**Weight Accorded by the ALJ to Medical Opinions**

Plaintiff argues that the ALJ improperly gave too much weight to the opinions of the non-examining medical and psychological experts who testified at the supplemental hearing, resulting in an erroneous assessment of Plaintiff's RFC. Plaintiff argues that the ALJ should rather have relied on the opinions of Drs. Heydebrand and Cason, who examined Plaintiff.

The weight to be given to a medical opinion is governed by a number of factors

including the examining relationship, the treatment relationship, the length of the treatment relationship and frequency of examination, the consistency of the source's opinion, and whether the source is a specialist in the area.  20 C.F.R. § 404.1527(d).  Generally, the ALJ should give more weight to the opinion of an examining source than to the opinion of non-examining source.  *Id.*  This does not mean however, that the ALJ cannot also consider "the opinion of an independent medical advisor" as to "the nature and severity of a claimant's impairment."  *Harris v. Barnhart*, 356 F.3d 926, 931 (8th Cir. 2004); *see also Vossen v. Astrue*,  612 F.3d 1011, 1015 (8th Cir. 2010) (holding that the ALJ properly relied on the testimony of a non-examining medical expert in determining that an alleged impairment did not meet listing severity).

The Court recognizes that "'[t]he opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole,'" but, "there are circumstances in which relying on a non-treating physician's opinion is proper."  *Vossen*, 612 F.3d at 1016 (quoted source omitted); *see also Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) (holding that the ALJ did not err in relying on a non-examining consulting physician's opinion which was consistent with the record as a whole).  Here, Dr. Reid's opinion of Plaintiff's mental impairment as no more than mild is not at odds with Dr. Heydebrand's GAF assessment of 85.

"It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians."  *Kirby*, 500 F.3d at 709 (8th Cir. 2007) (citing *Estes v.*

*Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002)).  The Court notes that the medical opinions Plaintiff argues the ALJ should have relied on are not those of treating physicians, but of state consultants who examined Plaintiff only once.

For similar reasons, the Court concludes that the ALJ was entitled to give more weight to Dr. Alex's opinion than to Dr. Cason's with respect to Plaintiff's physical RFC. Plaintiff's argument related to Dr. Cason's assessed limitations on Plaintiff's ability to stand and walk are rejected for the further reason that Plaintiff never asserted that she had problems walking or standing that in any way contributed to her alleged inability to work.

**Assessment of Plaintiff's Credibility and RFC**

Plaintiff argues that the ALJ's credibility assessment of Plaintiff was improper because the ALJ did not take into consideration Plaintiff's testimony that her older grandchildren helped her babysit the youngest grandchild, that she had to wear a bandage to be able to drive herself to the hearing, that she was taking Tramadol, a strong pain medication, and the letter of Plaintiff's daughter.

Before determining a claimant's RFC, the ALJ must evaluate the claimant's credibility with respect to the severity of her limitations.  *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  In *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), the Eighth Circuit held that the "absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints."  The ALJ must also consider observations by third parties and treating and examining physicians relating to such

matters as (1) the claimant's daily activities; (2) the frequency, duration, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id.*

"If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the court] will defer to [his] judgment even if every factor is not discussed in depth." *Dunahoo,* 241 F.3d at 1038. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall*, 274 F.3d at 1218 (8th Cir. 2001). Here, the record establishes that although the ALJ did not specifically cite *Polaski*, he recognized the correct factors and sufficiently explained how the evidence supported his credibility assessment. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (concluding that ALJ properly considered the *Polaski* factors even though the ALJ did not cite to *Polaski* directly).

The ALJ's observation of Plaintiff at the hearing was a valid factor to take into consideration. *See Lamp v. Astrue*, 531 F.3d 629, 632-33 (8th Cir. 2008) (holding that in assessing the plaintiff's allegations of lack of concentration, an impaired memory, and depression, the ALJ properly combined his review of the record with his personal observations); *Flynn v. Astrue*, 513 F.3d 788, 794 (8th Cir. 2008) (same with respect to the ALJ's observation, in assessing the plaintiff's physical RFC, that the plaintiff was able to sit through the one-hour hearing).

Plaintiff's argument that her mental illness, even if not severe, should have been factored into her RFC is unavailing given the lack of evidence that any mental illness

affected her RFC. *See Schamel v. Astrue*, No. 4:09CV1729 TCM, 2011 WL 864975, at

*15 (E.D. Mo. March 10, 2011); *see also Stussie v. Astrue*, No. 4:10CV1562 MLM, 2011

WL 3943986, at *13-14 (E.D. Mo. Sept. 7, 2011) (concluding that the ALJ's decision that

the plaintiff could perform the full range of medium work was supported by substantial

evidence, where the ALJ found that the plaintiff did not have a severe mental impairment

because she was mildly impaired in only one functional area); *Byerly v. Astrue*, No.

1:09CV138 RWS/MLM, 2010 WL 4905510, at *11-12 (E.D. Mo. Oct. 29, 2010) (same as

to the RFC for the full range of light work); *Grba-Craghead v. Astrue*, 669 F. Supp. 2d

991, 1012-13 (E.D. Mo. 2009) (same as to RFC for the full range of sedentary work).

**Further Development of the Record**

Plaintiff contends that the ALJ was remiss in not seeking out x-rays of Plaintiff's

right wrist that were referenced in, but not made part of, the medical record. An ALJ's

duty to develop the record arises only if a crucial issue in the case is undeveloped. *Goff v.

Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). In this case, no crucial issue was

undeveloped. The record contains sufficient medical evidence from the relevant time

period regarding Plaintiff's alleged disability due to problems of her right wrist. *See Smith

v. Astrue*, No. 4:10CV1319 DDN, 2011 WL 4445834, at *7 (E.D. Mo. Sept. 26, 2011)

(ALJ did not have a duty to obtain a copy of a prescription for a wheelchair/walker where

record contained sufficient medical evidence about the plaintiff's alleged physical

limitation).

Pursuant to the Commissioner's regulations, it was Plaintiff's responsibility to

provide medical evidence to show that she is disabled.  See 20 C.F.R. § 416.912;

*Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Here, Plaintiff failed to do

so.  The Court therefore concludes the ALJ properly determined Plaintiff's RFC based on

all of the relevant evidence of record.

**New Evidence Presented to Appeals Council**

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence

in light of the evidence submitted to the Appeals Council in which Plaintiff's provider

placed work-related restrictions to no heavy lifting and working no more than four hours

per day for no more than three to five days per week.  As noted above, the Appeals

Council stated that it considered this new evidence and that it did "not support greater

limitations than assessed by the [ALJ]."

The Appeals Council must consider additional evidence that is new, material, and

relates to the period on or before the date of the ALJ's decision.  20 C.F.R. § 404.970(b).

"Material" evidence is evidence that is "relevant to the claimant's condition for the time

period for which benefits were denied."  *Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir.

2008) (citation omitted).  Here, although the record from January 26, 2009, does reflect

greater limitations than assessed by the ALJ, the statement is conclusory, without

reference to any supporting evidence, and more importantly, addresses Plaintiff's

condition as it was  approximately six months after the ALJ's decision, and was thus not

material.  *See  Roberson v. Astrue*, 481 F.3d 1020, 1026 (8th Cir. 2007) (finding no error

in Appeals Council's decision that new records prepared seven months after the ALJ's

decision described claimant's condition on date records were prepared, not on earlier date, and consequently were not material); *Parsons v. Astrue*, No. 4:10CV1089 TIA, 2011 WL 4501110, at *20 (E.D. Mo. Sept. 28, 2011).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.


AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2011.